**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

MARIA ROSSANA AALA QUINIO,

                         Plaintiff,

      -against-

RUSTICO AALA and
LERMA AALA,

                         Defendants.
-------------------------------------------------------------X

**MEMORANDUM AND ORDER**

**CV-15-04912 (PKC) (ST)**

TISCIONE, United States Magistrate Judge:

         On March 28, 2016, plaintiff Maria Rossana Aala Quinio, through her counsel, Richard Pu, filed a Motion for Sanctions against defendant Rustico Aala and his attorney, Anthony Bramante, alleging, *inter alia*, that Mr. Aala provided knowingly false statements in response to plaintiff's interrogatory requests. Specifically, plaintiff alleges that Mr. Aala deliberately concealed his ownership of certain property in the Philippines and that his attorney, Mr. Bramante, was "complicit in the fraudulent concealment." Pl. Mot. at 3. The motion seeks sanctions in the form of a Court Order compelling Mr. Aala to submit a certified balance sheet itemizing his assets, property, inheritance and income in the Philippines to be prepared by "an accounting firm selected by Plaintiff to prevent collusion between Mr. Aala and an accounting firm" with the costs "borne equally by Mr. Aala and Bramante." Id. at 4. For the reasons set forth below, plaintiff's Motion for Sanctions is denied.

### Procedural History

         Plaintiff's original letter motion was filed on March 28, 2016 to the Honorable Peggy Kuo, who was then the assigned Magistrate Judge in the instant action. On April 4, 2016, Mr. Bramante filed an Affidavit/Declaration in opposition to plaintiff's motion. The same day,

and without seeking leave from the Court, Mr. Pu filed a reply to the initial motion, styled as a "*Letter Responding to Bramante 4/4/16 Letter.*"  On April 6, 2016, the case was transferred to the undersigned for purposes of managing discovery and pretrial proceedings.  Contrary to the suggestion by Mr. Pu, the Court did, in fact, review his motion papers in their entirety, and was prepared to address the issue at the status conference scheduled for June 7, 2016.  Nevertheless, on April 28, 2016, Mr. Pu refiled the same Motion for Sanctions along with a cover letter expressing his concern that the motion "may have slipped between the cracks."  Pu Letter, Apr. 28, 2016 at 1.  Mr. Pu also advised the Court that "[t]his matter is holding up the deposition of the defendant and we would appreciate a ruling."  Id.  Accordingly, to accommodate Mr. Pu's desire for a ruling and to ensure that the pending issue did not interfere with the timely completion of discovery in this matter, the Court issued an Order denying the Motion for Sanctions on April 28, 2016.  On May 1, 2016, plaintiff filed a Notice of Objection, which the District Court construed as a Motion for Reconsideration to be addressed by this Court in the first instance.  This Memorandum and Order sets forth the Court's basis for denying plaintiff's Motion for Sanctions, as well as the Motion for Reconsideration.

## Factual Background

This case involves plaintiff Maria Quinio's efforts to enforce a "settlement agreement" that was purportedly entered into between Ms. Quinio and her brother, defendant Rustico Aala.  A key term of the settlement agreement was that Mr. Aala would transfer all of his property in the Philippines to Ms. Quinio.

On November 15, 2015, plaintiff served defendants with an interrogatory seeking disclosure of "each parcel of real property owned by Mr. Aala within or outside of the United States, including any property situated in . . . the Philippines, including any house in the town of

Baun, Batangas." Appx. to Pl. Mot. at 11. On February 10, 2016, defendants served a response

to plaintiff's interrogatory listing, among other assets, three properties in Taal, Batangas,

Philippines. The response did not include any mention of property in Makati City, Philippines.

Id. at 12.

On February 16, 2016, plaintiff served a second interrogatory request on

defendants seeking additional information about the properties identified in defendants' response

to the first set of interrogatories. It also requested that defendants "[s]tate whether Rustico Aala

owns any property, in whole or in part, in . . . Makati City, and if the answer is anything other

than an unqualified 'no', identify the property." Id. at 16. On March 23, 2016, defendants

served a response to plaintiff's second set of interrogatories, stating, in pertinent part: "Rustico

Aala's interest in a condominium in Makati City is subject to the separate property claim of

Lerma Aala – see attached document." Id. at 17.[1]

On March 28, 2016, plaintiff filed the instant Motion for Sanctions against both

Mr. Aala and his attorney, Mr. Bramante, alleging that Mr. Aala's answer to the first set of

interrogatories was false and that he was deliberately attempting to conceal the existence of the

Makati City condo from plaintiff. Further, plaintiff argued that Mr. Bramante was "complicit in

the fraudulent concealment" because: (1) the "false" interrogatory answers on February 10, 2016

were not verified, which plaintiff equates with proof that "Bramante failed to have Mr. Aala

verify the false 2/10/16 answers because Bramante knew they were false" and "did not want Mr.

Aala to commit perjury"; and (2) the "assertion that Mr. Aala's interest in the condominium was

subject to a prior claim appears to be a subterfuge . . . that only a lawyer such as Bramante was

capable of devising." Pl. Mot. at 3.

---

[1] The document that was apparently attached to this interrogatory response has not been submitted to the Court by either party, nor have the parties explained what was contained therein.

As it turns out, the February 10, 2016 interrogatory answers were, in fact, verified by the defendants, who swore to the truth of their responses under penalty of perjury. See Appx. to Bramante Letter, Apr. 4, 2016 at 2. Moreover, while acknowledging that the answers to plaintiff's first set of interrogatory requests may have been inaccurate, defendants contend that any failure to list the Makati City condo was inadvertent and a mistake borne out of confusion. Specifically, defense counsel posits that Mr. Aala believes the condo belongs solely to his wife, Lerma Aala, because it was purchased with proceeds from property she inherited independent of her husband. Thus, in Mr. Aala's mind, he does not "own" the condo, regardless of what the titled interest for the property may be. Bramante Letter, Apr. 4, 2016 at 1. In addition, since defendants' ownership interest in the Makati City property did not exist until "after the alleged contract that is the subject of this proceeding," defendants contend that it could not be part of the consideration from the defendants as part of the purported settlement agreement. Id. at 2.

## Legal Standard

As an initial matter, plaintiff fails to set forth any relevant legal authority in support of her Motion for Sanctions. She cites to no applicable Rule of Civil Procedure, engages in no legal analysis and fails to set forth any case law purporting to authorize imposition of the "sanctions" she requests. Indeed, the only case even mentioned in plaintiff's motion is an inapposite Supreme Court case from 40 years ago exploring the contours of criminal penalties for perjury committed before a grand jury. This failure alone merits denial of plaintiff's motion. See, e.g., Tylena M. v. Heartshare Human Servs., 2004 WL 1252945, at *3 (S.D.N.Y. June 7, 2004) (denying motion for sanctions because the moving party failed to cite any legal authority in support of its application); cf. Rotblu v. 300 East 74th Street Owners Corp., 1997 WL 16063, at *1 (S.D.N.Y. Jan. 16, 1997) (noting that defendant's failure to cite any legal authority in

support of its motion "effectively places on the court the burden of conducting the initial legal analysis that is properly the responsibility of defendant's counsel" and is "unacceptable"); Cea v. Access 23 TV, 2015 WL 5474070, at *2 (S.D.N.Y. Sept. 15, 2015) (same).

Notwithstanding plaintiff's failure to provide legal support, it is well-settled that a court supervising discovery has broad discretion to impose sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure for discovery abuses. See John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988) (the "imposition of sanctions under Rule 37 is within the discretion of the district court" and will be reversed only if "the decision constitutes an abuse of that discretion"); Corporation of Lloyd's v. Lloyd's U.S., 831 F.2d 33, 36 (2d Cir. 1987); see also DePonce v. Buxbaum, 1995 WL 92324, at *10 (S.D.N.Y. Mar. 7, 1995) (awarding monetary sanctions against *pro se* defendant for misleading interrogatory responses). "Several factors . . . useful in evaluating" whether to impose sanctions under Rule 37 include "'(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance.'" Agiwal v. Mid Island Mortgage Corp., 555 F.3d 298, 302-03 (2d Cir. 2009) (quoting Nieves v. City of New York, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)). Another factor relevant to the appropriateness of sanctions under Rule 37 for discovery violations, albeit not a dispositive one, is the "prejudice suffered by the opposing party." Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006).

Moreover, federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them; thus, when a party acts "in bad faith, vexatiously, wantonly, or for oppressive reasons," the court may exercise its

discretion in fashioning a remedy. <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 45-46 (1991). Even in the absence of a discovery order, a court may impose sanctions for misconduct during discovery through this inherent power to manage its affairs. <u>See</u> <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 106-07 (2d Cir. 2002). Because of the "potency of the court's inherent power," however, "courts must take pains to exercise restraint and discretion when wielding it." <u>DLC Management Corp. v. Town of Hyde Park</u>, 163 F.3d 124, 136 (2d Cir. 1998). Accordingly, the Second Circuit has required a finding of "bad faith" for the imposition of sanctions under the inherent power doctrine, which must be shown by (1) "clear evidence" or (2) "harassment or delay or . . . other improper purposes." <u>United States v. Int'l Brotherhood of Teamsters</u>, 948 F.2d 1338, 1345 (2d Cir. 1991) (quotation marks and citation omitted).

Thus, while it is certainly within the Court's discretion to impose sanctions against a party for providing false or misleading answers to interrogatories, the case law clearly establishes that the violation must be accompanied by some form of bad faith, deliberate concealment or vexatious purpose in order to justify sanctions under either Rule 37 or the Court's inherent power. <u>See</u>, <u>e.g.</u>, <u>Interscope Records v. Barbosa</u>, 2007 WL 14332, at *3 (E.D.N.Y. Jan. 3, 2007) (imposing monetary sanctions where plaintiff "intentionally concealed discoverable information" by providing false and misleading answers to interrogatories and failed to explain her actions or respond in any way to defendant's formal motion for sanctions); <u>Sterling v. Interlake Industries Inc.</u>, 154 F.R.D. 579, 587 (E.D.N.Y. Apr. 8, 1994) (denying plaintiff's motion for sanctions under Rule 37 based on allegedly false and misleading interrogatory answers because the Court found that defendant's responses to plaintiff's interrogatories "do not qualify as 'flagrant bad faith' or 'callous disregard' for the Federal Rules").

## Analysis

In determining whether Mr. Aala's answer to plaintiff's first interrogatory request reflects deliberate concealment, as alleged by plaintiff, or a good-faith mistake, as contended by defendant, the Court makes the following observations. First, the purported "settlement agreement" in which defendant Rustico Aala allegedly agreed to transfer all of his "assets, property, inheritance and income in the Philippines" to plaintiff was signed on November 20, 2009. Plaintiff's first set of interrogatories, propounded on November 5, 2015, requested, in pertinent part, that defendants: "Identify each parcel of real property owned by Mr. Aala within or outside of the United States, including any property situated in a. the United States; b. the Philippines, including any house in the town of Baun, Batangas; c. any other place . . ." Appx. to Pl. Mot. at 10-11. The request does not specify whether it refers to property "owned" by Mr. Aala at the time of the purported "settlement agreement" in 2009 (which is clearly relevant in this action seeking to enforce the terms of the settlement agreement), or property "owned" by Mr. Aala at the current time (which would only be relevant to plaintiff's collection efforts if she ultimately succeeds in her claim). Moreover, although Lerma Aala is a named defendant in the case, plaintiff did <u>not</u> specifically ask for a listing of property owned by Mrs. Aala.

In a subsequent interrogatory request, propounded on February 16, 2016, plaintiff further requested that defendants: "State whether Rustico Aala owns any property, in whole or in part, in:  a. Baun City,  b. Tagaytay City, or  c. Makati City, and if the answer is anything other than an unqualified 'no', identify the property."  In response, Mr. Aala noted that he has an "interest in a condominium in Makati City" that is "subject to the separate property claim of Lerma Aala." <u>Id</u>. at 17. In his response to plaintiff's Motion for Sanctions, defense counsel further explained that the condominium was purchased with proceeds from the inherited property

7

of Lerma Aala but that Rustico Aala <u>may</u> have a titled interest in the property. Bramante Letter, Apr. 4, 2016 at 2. Defendants also point out that their interest in the property did not exist at the time of the purported settlement agreement, and therefore could not have been contemplated as part of the consideration in the settlement agreement. <u>Id</u>. at 3.

Given the ambiguous nature of plaintiff's first interrogatory request, coupled with the confusion over Mr. Aala's actual interest, if any, in the disputed property and the fact that the property was apparently acquired after the settlement agreement was executed, the Court credits defendants' explanation that the discrepancy between their answers to the first and second set of interrogatories was, at worst, an inadvertent mistake borne out of confusion rather than a deliberate attempt to conceal information. Indeed, the fact that the property was disclosed in response to plaintiff's subsequent interrogatory request belies any inference of nefarious purpose. If defendants were truly attempting to hide assets from plaintiff they hardly would have been forthcoming simply because plaintiff formulated a slightly better interrogatory question.

Plaintiff also fails to articulate any meaningful prejudice stemming from defendant's alleged discovery violation. <u>See</u>, <u>e.g.</u>, <u>In re Lavender</u>, 399 Fed. Appx. 649, 653 (2d Cir. 2010) (affirming lower court's denial of Rule 37 sanctions and holding that "the lack of any meaningful prejudice clearly supported the judge's decision not to impose sanctions"). As plaintiff concedes, upon receiving the more targeted interrogatory request on February 16, 2016, defendant Rustico Aala promptly disclosed that he <u>potentially</u> had a property interest in the Makati City condominium purchased with proceeds from property inherited by his wife, Lerma Aala. If, in fact, there was an inaccuracy in Mr. Aala's initial interrogatory response, it was quickly cured (without the need for a motion to compel or other Court intervention). Plaintiff's unsupported conjecture that defendants "might" be concealing other properties does not establish

that she suffered any prejudice from the purported inaccuracy of defendants' first interrogatory response. Defendants are, of course, required to truthfully and accurately respond to discovery requests. If they deliberately conceal assets or otherwise thwart legitimate discovery orders, they could be subject to sanctions for those violations. But speculative musings about possible future violations does not suffice to establish past prejudice.

Far more disturbing than the Motion for Sanctions against Mr. Aala, which arguably has at least some legitimate good-faith basis, is plaintiff's wholly unsupported contention that defense counsel was "complicit" in an elaborate scheme to fraudulently conceal relevant information. Based on a factual premise that is demonstrably false (i.e., that defendants failed to verify their interrogatory answers), compounded by rank speculation (that Mr. Bramante deliberately failed to have defendants verify the answers because he knew they were false), and rife with inappropriate *ad hominem* attacks, plaintiff's Motion for Sanctions against Mr. Bramante is precisely the type of vexatious, wanton and oppressive litigation tactic that the Federal Rules of Civil Procedure and the inherent authority of federal courts to control the conduct of those who appear before them are designed to remediate and discourage. Not only is plaintiff's Motion for Sanctions against Mr. Bramante denied, but counsel for plaintiff, Mr. Pu, is expressly warned that the Court has no tolerance for such unprofessional conduct.

## Plaintiff's Motion for Reconsideration

Plaintiff objected to the Court's April 29, 2016 Order denying her Motion for Sanctions in a letter dated May 1, 2016. The District Court construed this letter as a Motion for Reconsideration. In support of this motion, Plaintiff adduced no additional facts or legal support. Rather, plaintiff merely reiterated the same arguments while speculating that her motion must not have been given "proper consideration" because it was denied too quickly. Pl. Mot. for

Reconsideration at 3. In fact, as discussed above, plaintiff's motion had been pending before Judge Kuo since March 28, and this Court had ample time to review the parties' submissions, was prepared to discuss its ruling on the motion at the status conference already scheduled for June 7, and issued the April 29 Order only in response to Mr. Pu's letter on April 28, 2016 stating that this extraneous matter was somehow "holding up" discovery in the case. In any event, nothing in plaintiff's most recent filing merits reconsideration of the Court's decision denying her Motion for Sanctions.

## Conclusion

In sum, the Court finds no bad faith with respect to the conduct of defendant Rustico Aala or his counsel, Anthony Bramante. Accordingly, plaintiff's Motion for Sanctions is denied. Plaintiff's Motion for Reconsideration presents no new facts or arguments and is also denied. Finally, plaintiff's attorney, Richard Pu, is advised that any future pre-trial motions, particularly motions for sanctions against opposing counsel, must be supported by both a legitimate good-faith basis and citation to relevant legal authority. Failure to comply with these standards will result in sanctions being imposed for frivolous and vexatious litigation tactics. See Sassower v. Field, 973 F.2d 75, 78-81 (2d Cir. 1992) (upholding district court's imposition of sanctions where plaintiffs' litigation tactics "vexatiously, wantonly and for oppressive reasons increased the legal fees enormously").

**SO ORDERED**

Dated: Brooklyn, New York
       May 4, 2016

_____/s/_____
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York